IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ROSEMARY E. HARRIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 04-2578-CM |
| **COMMUNITY RESOURCES COUNSEL OF** ) | |
| **SHAWNEE COUNTY, KANSAS, INC. and** ) | |
| **JAMES L. OLSON** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

On November 11, 2004, plaintiff Rosemary E. Harris brought suit against defendants Community Resources Counsel of Shawnee County, Kansas, Inc. ("CRC") and James L. Olson alleging race discrimination against both defendants in violation of 42 U.S.C. § 1981, race discrimination against defendant CRC in violation of both Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and the Kansas Acts Against Discrimination ("KAAD"), Kan. Stat. Ann. § 44-1001 *et seq.*, hostile working environment against defendant CRC in violation of both Title VII and the KAAD, retaliation against both defendants in violation of 42 U.S.C. § 1981, and retaliation against defendant CRC in violation of both Title VII and the KAAD.

Pending before the court is defendant CRC's Motion for Partial Summary Judgment (Doc. 46). CRC seeks summary judgment on plaintiff's Title VII claims, arguing that CRC is not an "employer" as defined by Title VII.

**I.      Facts**[1]

Plaintiff was employed by CRC from 1991 through 2003. During the same period of time, defendant Olson was the executive director of CRC. During plaintiff's employment, CRC employed fewer than ten employees, including full and part-time.

Plaintiff's job at CRC was to provide information and resources to the elderly in Shawnee County and the City of Topeka. Plaintiff's job also required her to perform work for interrelated organizations, including Jayhawk Area Agency on Aging ("JAAA") and United Way. JAAA and United Way provided funding to CRC for the Older Citizens Information program, which, in turn, partially funded plaintiff's position. JAAA and United Way were intimately involved with plaintiff's day-to-day activities; they directed and reviewed some of her work regarding the elderly, and sometimes instructed her to change the focus of her work.

Plaintiff believed that issues concerning her employment, such as discrimination, were split between CRC, JAAA and United Way. As a result, plaintiff asked Jocelyn Lyons, the program coordinator at JAAA, whether JAAA had a discrimination policy that applied to her.

Plaintiff asserts that, in 2003, JAAA had between fifteen and twenty employees and United Way had approximately 15 employees.

**II.     Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In

---

[1] The court sets forth the following facts in the light most favorable to plaintiff, the non-moving party, pursuant to Fed. R. Civ. P. 56.

applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670-71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an

important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**III.     Analysis**

Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."  42 U.S.C. § 2000e(b).  Defendant CRC argues that it employed fewer than fifteen employees during all relevant times and therefore does not meet the definition of an employer under Title VII.  Plaintiff does not dispute that CRC, standing alone, fails the employee requirement under Title VII.  Plaintiff contends, however, that CRC, JAAA and United Way were "joint employers," thereby allowing her to aggregate the number of employees of each joint employer for purposes of Title VII.

Two entities are joint employers "'if the entities share or co-determine those matters governing the essential terms and conditions of employment.  In other words, courts look to whether both entities exercise significant control over the same employees.'"  *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1323 (10th Cir. 2004) (quoting *Bristol v. Bd. of County Comm'rs of the County of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002)).  The joint employment determination is "employee-specific."  *Id.* at 1324.  Thus, "'[w]hen a worker is formally employed by one organization, but important aspects of his work are subject to control by another organization, both organizations are employers of the worker.'"  *Id.* (quoting *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1330 (10th Cir. 2002)).  The most important component of the "the terms and conditions of an employment relationship is the right to terminate it under certain circumstances."  *Id.* (quoting *Bristol*, 312 F.3d at 1219).

In support of plaintiff's argument that she was jointly employed by CRC, JAAA and United Way, plaintiff asserts that JAAA and United Way were involved in plaintiff's day-to-day activities, partially funded her position through payments to CRC, helped direct her work, including sometimes changing the focus of her work, and reviewed her work. Plaintiff also alleges that the terms and conditions of her employment were split between these three entities, as evidenced by the fact that plaintiff sought out the advice of JAAA's program coordinator regarding applicable discrimination policies.

Significantly, plaintiff argues that JAAA and United Way controlled significant aspects of plaintiff's work, while defendant CRC argues that plaintiff had work-related interaction with these organizations, but did not work directly for either of them. No other facts are in dispute; plaintiff alleges that JAAA and United Way had significant control over what amounts to the essential terms and conditions of her employment without specifically discussing termination, while defendant CRC asserts that neither JAAA nor United Way had control over the termination of employees hired by CRC. Defendant CRC conversely argues, and plaintiff does not dispute, that CRC had no control of employees of JAAA or United Way with respect to hiring and firing, discipline and supervision, or compensation and benefits.

Because the joint employer determination is "employee-specific," *Sandoval*, 388 F.3d at 1324, and CRC undisputably had less than ten employees at all relevant times, plaintiff must demonstrate that JAAA and United Way were joint employers to numerous CRC employees. Simply demonstrating control over one employee is not enough to prove joint employer status for all employees of the organization. For instance, plaintiff in *Sandoval* alleged she was discriminated against when defendant, her employer with less than fifteen employees during the relevant time periods, failed to hire her for a particular position. *Id.* at 1324. The Tenth Circuit held that in order for plaintiff's employer to be potentially liable, plaintiff must have

shown not merely that her employer and her alleged joint employer might have been joint employers of other similarly-situated employees, but that her employer and the alleged joint employer were joint employers of the specific position for which plaintiff applied. *Id.; see also Burdett v. Abrasive Eng'g & Tech., Inc.*, 989 F. Supp. 1107, 1112 (D. Kan. 1997) (finding that plaintiff did not satisfy Title VII's statutory fifteen-employee requirement when defendants utilized a temporary employment agency which employed 300 employees because "[o]nly those agency employees over whom [defendant] Abrasive exercised control may be considered Abrasive's employees"); E.E.O.C. Compliance Manual § 2-III B.1.iii(b) ("To determine whether [Title VII applies to a particular employer], count the number of individuals employed by the respondent alone and the employees jointly employed by the respondent and other entities. If an individual is jointly employed by two or more employers, then s/he is counted for coverage purposes for each employer with which s/he has an employment relationship.").

Significantly, although plaintiff must demonstrate that CRC, JAAA and United Way were joint employers to numerous employees[2] to meet the Title VII hurdle, plaintiff did not provide the court with any information regarding other CRC employees' relationships with JAAA and United Way. The court is unwilling to consider whether other CRC employees were also controlled by JAAA and United Way because plaintiff declined to provide the court with any information about other CRC employees. *See Ferroni v. Teamsters, Chauffeurs & Warehousemen Local No. 222*, 297 F.3d 1146, 1152 (10th Cir. 2002) ("We cannot conclude that the district court erred in failing to consider evidence that Ferroni failed to

---

[2] Because it is undisputed that CRC employed less than ten employees at all relevant times, plaintiff must demonstrate that CRC, JAAA and United Way were joint employers to more than five employees in order to meet the fifteen employee requirement under Title VII.

produce. We therefore affirm the district court's conclusion that the Union had fewer than 15 employees.").

The court finds that, even after applying the joint employer doctrine, no rational trier of fact could find that CRC employed, either alone or jointly with JAAA and/or United Way, more than fifteen employees during the applicable period. As such, defendant has failed to show that CRC is a joint employer with JAAA and United Way under Title VII. Accordingly, the court finds that defendant CRC has successfully demonstrated that no genuine issues of material fact exist and that defendant CRC is entitled to judgment as a matter of law with regard to plaintiff's Title VII claims.

**IT IS THEREFORE ORDERED** that defendant Community Resources Counsel of Shawnee County, Kansas, Inc.'s Motion for Partial Summary Judgment (Doc. 46) is granted.

Dated this 15th day of November 2005, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**