## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROSEMARY E. HARRIS, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 04-2578-CM |
| COMMUNITY RESOURCES COUNSEL OF ) | |
| SHAWNEE COUNTY, KANSAS, INC. and ) | |
| JAMES L. OLSON, ) | |
| ) | |
|     Defendants. ) | |
| ————————————————— ) | |

## MEMORANDUM AND ORDER

On November 11, 2004, plaintiff Rosemary E. Harris brought suit against defendants Community

Resources Counsel of Shawnee County, Kansas, Inc. ("CRC") and James L. Olson alleging (1) race

discrimination against both defendants in violation of 42 U.S.C. § 1981; (2) race discrimination against

defendant CRC in violation of both Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42

U.S.C. § 2000e *et seq.*, and the Kansas Act Against Discrimination ("KAAD"), Kan. Stat. Ann. § 44-

1001 *et seq.*; (3) hostile work environment against defendant CRC in violation of both Title VII and the

KAAD; (4) retaliation against both defendants in violation of 42 U.S.C. § 1981; and (5) retaliation against

defendant CRC in violation of both Title VII and the KAAD.

Pending before court are defendant CRC's motions for summary judgment.[1]

---

[1] Defendant CRC filed three motions for summary judgment, one for each of plaintiff's KAAD, Title VII & § 1981 claims. The pretrial order in this case states: "Consistent with the scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda submitted in connection with all further motions or other pretrial matters shall not exceed 30 pages, absent an order of the court." When combined, the arguments and authorities sections of defendant CRC's three summary judgment motions far exceed thirty pages. Out of an abundance of caution, the court will consider each of

I.       **Facts**[2]

Plaintiff was employed by defendant as a program coordinator CRC from May 1991 until she was terminated in June 2003.  During that time, defendant Olson was the executive director of CRC and plaintiff's boss.  Because plaintiff's job description included making daily home visits, giving presentations, and attending monthly meetings outside the county and the state, plaintiff was out of the office more than any other employee at CRC.

In early June 2003, plaintiff attended a national conference in Cleveland, Ohio.  On her return trip, she suffered an injury in the airport.  This injury further aggravated her fibromyalgia, causing her excruciating pain.

The first work day after her trip, Monday, June 9, 2003, plaintiff reported to work.  Plaintiff told defendant Olson about her injury, and that she had scheduled a doctor's appointment for that same day.  Defendant Olson told her to go home and come back to work when she was better.  Before leaving for her doctor's appointment that same day, plaintiff emailed defendant Olson indicating that she was willing to participate in a meeting on Friday, June 13, but that she preferred to schedule the meeting for the following week.  As she walked out of the building, she told defendant Olson (who was outside smoking) that she expected to be gone several days as a result of her pain.  Defendant Olson acknowledged this statement.

---

defendant CRC's arguments.  However, for the record, the court expects the parties to follow the thirty-page limit in the future.

[2] The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56.  The court has combined the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.

Plaintiff spent the next three days, Tuesday, June 10 through Thursday, June 12, 2003, recuperating at home, and the fourth day, Friday, June 13, 2003, plaintiff's boyfriend took care of her.

Prior to her injury, plaintiff had planned to attend a work conference in Salina, Kansas, from Tuesday, June 10, 2003, through Thursday, June 12, 2003.  Although plaintiff had placed the Salina trip on the office calendar, she was told that she was also supposed to talk with or email defendant Olson in addition to putting her appointments on the calendar.  As a result of her failure to do so, defendant Olson emailed plaintiff, stating: "I noted that the schedule for this week now says you will be in Salina Tues, [sic] Wed, [sic] Thurs.  I do not recall you mentioning this or emailing me about it.  We need to talk."

On Friday, June 13, 2003, defendant CRC's bimonthly paychecks were prepared.  Plaintiff was still at home on Friday, so she asked her friend, Doris Webb, to pick up her paycheck.  Ms. Webb had picked up plaintiff's paychecks before.  When Ms. Webb asked defendant Olson about getting plaintiff's paycheck, defendant Olson refused and told Ms. Webb that plaintiff had been fired.  Plaintiff was not completely surprised to hear this news from Ms. Webb.  Defendant Olson changed CRC's locks that same weekend.

Defendant Olson thought plaintiff had been at the Salina conference on Tuesday, June 10 through Thursday, June 12, 2003, as planned.  He testified that he was scared when plaintiff did not return to work on Friday, June 13, 2003, and that he and his staff started making phone calls to look for plaintiff. Defendant Olson testified that he was concerned that plaintiff might have been under the undue influence of her boyfriend.  His investigation included calling Teresa Moore, one of plaintiff's friends, to say that plaintiff had not shown up for work.  Ms. Moore told defendant Olson that she had just spoken to plaintiff the night

before.  Defendant Olson called Ms. Moore back later, suggesting that "foul play" might be involved with plaintiff's disappearance.

Defendant Olson asserts that he terminated plaintiff on June 18, 2003 for abandoning her job, and that he based his decision on information provided by people who were called and who called defendant CRC's office, and plaintiff's failure to return to work or call the office.

On June 18, 2003, defendant Olson received a memorandum from office manager Elmer Karstensen.  Mr. Karstensen's memo stated that defendant CRC was aware of plaintiff's illness, writing "[T]here may have been some sick leave use on June 12," and that an unauthorized absence requires "counseling" under defendant CRC's policy.

In response to Mr. Karstensen's memo, defendant Olson wrote: "We have falsified reports & unexcused absence – termination is verified by me."  Defendant Olson also stated that "[T]here is some evidence that she falsified sick records for April Houston trip."  Defendant Olson testified that his allegation of falsifying documents arose as a result of a telephone conversation he had with Ms. Moore on June 18, 2003.  In that telephone call, defendant Olson testified that Ms. Moore told him that plaintiff got married in April while she was in Texas on sick leave.  Ms. Moore, however, testified that no such conversation ever took place.  Defendant Olson also asserts that plaintiff falsified defendant CRC's records because, according to the office calendar, plaintiff was scheduled to be in Salina from June 10, 2003 through June 12, 2003, and she did not take that trip.   Mr. Karstensen's memo did not list falsification of documents as a basis for plaintiff's termination.

Defendant's personnel policy regarding unauthorized absences requires informal counseling, formal counseling or written statement, and a final written warning before termination.  Unauthorized absences are

not included within those actions that allow for immediate termination.  Immediate termination is an available remedy for falsification of defendant CRC's records.  Defendant Olson acknowledges that he did not employ defendant CRC's progressive discipline procedure in plaintiff's case.

Defendant Olson sent a termination letter to plaintiff on June 18, 2003, which states that "the sick days claimed for your April 2003 trip to Houston TX to seek medical care were falsified . . . ."  Defendant Olson does not know whether those sick days were in fact falsified.  Defendant Olson's termination letter to plaintiff does not mention falsification of the office calendar as a basis for termination.

Defendant Olson never regularly looked to see if other employees had falsified entries in the CRC calendar by failing to attend appointments.  Defendant Olson never advised employees that putting something on the calendar and not following through was a "fireable offense."  Several months after plaintiff's termination, defendant Olson wrote in his own evaluation that: "We have a good document trail of actions taken both before and after her departure that show CRC has been a responsible and caring employer."

Defendant CRC's written policy prohibiting discrimination directs that "Actions, words, jokes or comments based on an individual's sex, race, ethnicity, age, religion or any other legally protected characteristic will not be tolerated; harassment (both overt and subtle) is strictly prohibited."  Defendant Olson was responsible for implementing that policy.

Defendant Olson referred to plaintiff as "buckwheat" on at least two occasions during her employment.  Defendant Olson said the word "nigger" in the CRC office at least one time.   Defendant Olson mentioned plaintiff's "black ass" at least three to four times a month.  Danielle Threatt, a former

employee of defendant CRC, testified that defendant Olson used the term "black ass" perhaps every day at some points in her employment.

Defendant Olson stated that blacks were mentally inferior to whites once every three or four months, and at least thirty times total, during plaintiff's employment. Ms. Threatt testified that she has a distinct memory of defendant Olson discussing that blacks are mentally inferior to whites.

Defendant Olson stated that people should only date within their own race approximately five times during plaintiff's employment. The last time that plaintiff can recall any such comments being made by defendant Olson was four or five months before her termination. Ms. Moore also heard defendant Olson comment about interracial dating.

Defendant Olson told plaintiff that she spoke inappropriately, including references to her speech as "too black" or "ghetto." The last time that plaintiff can recall defendant Olson making any comment about her speaking "too black" was within the last six months prior to her termination. Plaintiff testified that defendant Olson would make this type of comment every six months on average. Defendant Olson forbade plaintiff from participating in numerous board meetings because she spoke "too black."

Defendant Olson told plaintiff that she was "dumb as a box of rocks" every month or two on average, totaling more than fifty times during her employment. The last time that plaintiff can recall being told that she was "dumb as a box of rocks" was in May 2003.

Defendant Olson told race-related jokes in the workplace, including a joke about African-American families living in low-income housing. The last time plaintiff can recall defendant Olson telling a racially-offensive joke was six months before her termination. Defendant Olson would tell these types of

jokes once every six months. Ms. Threatt also testified that defendant Olson would tell race-related jokes all the time.

In the last six months of her employment, plaintiff estimates that she was subjected to at least twenty-two and up to twenty-eight specific racial comments by defendant Olson. Plaintiff felt humiliated whenever defendant Olson made these racial comments or jokes. After being subjected to these comments or jokes, other employees observed that plaintiff would go to her office and stay behind closed doors. Plaintiff testified that no other employee at defendant CRC was subjected to constant comments about race. In addition, defendant Olson would take other employees into his office and talk with them, but he would yell at plaintiff in front of the other staff.

Plaintiff asked defendant Olson for permission to take computer-related classes on three occasions. The last time that plaintiff asked to attend a class was in 2002. Plaintiff testified that she was told each time that she did not need computer classes. Defendant Olson did not feel she needed the classes because they were not part of her job description and not associated with her job.

The computers provided to plaintiff often came from other employees in the office, including volunteers. When plaintiff would ask defendant Olson to come and help her with her computer, he would sit down and fix hers instead of showing her how. When other employees had computer problems, defendant Olson would show them how to fix it themselves.

Plaintiff was directed to write down when she was out of the office on a calendar at the front desk. In the months before her termination, defendant Olson told plaintiff that he wanted her to sign out on the calendar when she went out so that he would know where she was. Plaintiff did not always use the

calendar when she left the office.  Plaintiff claims that Karmel Davis, Mr. Karstensen, and Chandra Blackwell were not required to document when they left the office.

Plaintiff testified that she sent an email to defendant Olson around February 2003  complaining about defendant Olson's treatment of her.  Defendant Olson recalled receiving plaintiff's email regarding her dissatisfaction, but testified that he did not know if the email was ever recovered during discovery.  Plaintiff also testified that she spoke with defendant Olson directly on one occasion, telling him that she was tired of being treated badly in the office.  Plaintiff testified that defendant Olson responded by stating "get your black ass out of my office."

After those communications, defendant Olson's treatment toward plaintiff became more harsh. Before her complaints to defendant Olson, the office calendar was a suggested practice for the office employees; afterwards, it was mandatory for plaintiff only.  During the spring and early summer of 2003, defendant Olson began asking plaintiff whether her medical bills and other debts were "paid up."  Plaintiff interpreted defendant Olson's increased abuse and questions about her financial solvency to mean that defendant Olson was planning to terminate her in the near future.

No other employee was terminated by defendant Olson in the three years prior to plaintiff's termination.  Ms. Threatt, an African-American, was terminated by defendant Olson in 1994.  Defendant Olson hired a white replacement for plaintiff's position without interviewing any persons of color.

Plaintiff filed a charge with the Kansas Human Rights Commission ("KHRC") on December 9, 2003, and that complaint was dually filed with the Equal Employment Opportunity Commission ("EEOC") on the same date.  Plaintiff requested that the KHRC dismiss her charge, and her charge was dismissed on

October 19, 2004.  The EEOC issued plaintiff a Right to Sue letter on November 8, 2004.  Plaintiff filed

the instant lawsuit on November 30, 2004.

## II.      Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue

as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In

applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most

favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)

(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.     Analysis[3]

## A.      Procedural Issues

## 1.      Application of the KAAD

The KAAD prohibits employers from discriminating against their employees on the basis of race,

*inter alia*.  *See* Kan. Stat. Ann. § 44-1009(a)(1).  Defendant CRC argues that plaintiff's KAAD claim fails

because, as a nonprofit corporation, defendant CRC does not meet the KAAD's definition of an

"employer."  Plaintiff argues, and the court agrees, that defendant CRC has not previously raised this

defense.

The Pretrial Order supercedes all prior pleadings, establishes the issues to be considered at trial,

and controls "the subsequent course of the action unless modified by a subsequent order."  Fed. R. Civ. P.

---

[3] On November 15, 2005, this court found that defendant CRC did not meet Title VII's definition of an "employer," and granted defendant CRC's partial summary judgment motion on that limited issue. Therefore, the court grants defendant CRC's motion for summary judgment with regard to plaintiff's Title VII claims, and limits its analysis to plaintiff's remaining § 1981 and KAAD claims.

16(e); *Wilson v. Muckala*, 303 F.3d 1207, 1215-16 (10th Cir. 2002).  Here, the Pretrial Order includes defendant CRC's defense that "defendant had less than ten employees," and, "[a]s such, it is not an employer within the meaning of federal and state law."[4]  However, this previously-asserted defense does not encompass defendant CRC's current argument that nonprofit corporations are specifically excluded from the KAAD's definition of an employer.[5]  Because the Pretrial Order finalized defendant CRC's defenses and controls the subsequent course of litigation, the court finds that plaintiff would be prejudiced if the court were to consider defendant CRC's current defense at this stage of litigation.

Even when, out of an abundance of caution, the court considers the merits of defendant's argument, the result is the same.  The KAAD defines an employer as:

> any person in this state employing four or more persons and any person acting directly or indirectly for an employer, labor organizations, nonsectarian corporations, organizations engaged in social service work and the state of Kansas and all political and municipal subdivisions thereof, but shall not include a nonprofit fraternal or social association or corporation.

*Id.* § 44-1002(b).  Defendant CRC reads the last phrase of this definition to exclude a nonprofit association or corporation such as defendant CDC.  Defendant CRC bolsters its argument with caselaw applying this and similar statutes to exclude private membership clubs, such as private golf clubs or the Girl Scouts, from the "employer" definition.

---

[4] In the Pretrial Order, defendants also raise the defense that "CRC is not an employer within the meaning of Title VII nor within the meaning of 42 U.S.C. § 1981."  However, the Pretrial Order does not include an equivalent defense with regard to the KAAD.

[5] Moreover, the KAAD defines an employer as a person employing four or more employees, Kan. Stat. Ann. § 44-1002(b), not ten or more employees as defendant CRC's previously-raised defense asserts.

-10-

The court finds that the plain language of § 44-1002 includes "organizations engaged in social service work," and excludes nonprofit fraternal associations or corporations and nonprofit social associations or corporations. In other words, § 44-1002 does not broadly exclude all nonprofit corporations. *See Kan. Human Rights Comm'n v. Topeka Golf Ass'n*, 856 P.2d 515, 591 (Kan. App. 1993) (holding that a private golf club with a purpose to sponsor and regulate golf tournaments is not an employer as defined in § 44-1002); *Roman v. Concharty Council of Girl Scouts, Inc.*, 195 F. Supp. 2d 1377, 1382 (N.D. Ga. 2002) (holding that the Girl Scouts, as a private membership club, is exempt from Title VII and the Americans with Disabilities Act). Because defendant CRC is a nonprofit entity whose purpose is "to ensure that the Topeka-Shawnee County community has a planned, coordinated and efficient program of health, education, welfare, and recreational services dealing effectively with the needs of all its people," the court finds that defendant CRC is an organization engaged in social work. Moreover, defendant CRC's purpose unequivocally establishes that defendant CRC is not a nonprofit fraternal or social association or corporation. *Kan. Human Rights Comm'n*, 856 P.2d at 591; *Roman*, 195 F. Supp. 2d at 1382. As such, defendant CRC meets the definition of an "employer" and is therefore governed by the KAAD. The court denies defendant CRC's summary judgment motion on this issue.

## 2.      KAAD Exhaustion of Administrative Remedies

"The Tenth Circuit has made clear that the exhaustion of administrative remedies is a jurisdictional prerequisite to bringing suit under . . . the KAAD." *McCall v. Board of Comm'rs of County of Shawnee, Kan.*, 291 F. Supp. 2d 1216, 1221 (D. Kan. 2003) (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997)). "The exhaustion requirement serves the dual purpose of ensuring the EEOC [and the KHRC] has the opportunity to investigate and conciliate claims and of providing notice to the

-11-

charged party of the claims against it." *Id.* (citing *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997)).

Defendant argues that plaintiff's complaint includes new allegations not included in her administrative charges with the KHRC. Without denying defendant's point, plaintiff argues that the charges outlined in the instant complaint are like or reasonably related to her KHRC charge, citing *Ingels v. Thiokol Corp.*, and that defendant CRC had adequate notice of plaintiff's complaints. 42 F.3d 616 (10th Cir. 1994). However, the "like or reasonably related" standard set forth in *Ingels* is no longer the law in the Tenth Circuit. *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1238 (10th Cir. 2004). The Tenth Circuit has recently held that "each discrete retaliatory action constitutes its own 'unlawful employment practice for which administrative remedies must be exhausted.'" *Id.* (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)). Therefore, "'unexhausted claims involving discrete employment actions are no longer viable.'" *Id.* (quoting *Martinez*, 347 F.3d at 1210); *see also Dunlap v. Kan. Dep't of Health and Env't*, 127 Fed. Appx. 433, 438 (10th Cir. 2005) (recognizing the abrogation of the "like or reasonably related" exception to the exhaustion requirement).

Plaintiff's KHRC charge includes the following specific complaints: (1) from 1991 to June 2003, plaintiff was subjected to racial slurs by defendant Olson; (2) in February 2003, plaintiff sent defendant Olson a written grievance concerning race discrimination; (3) from May 2002 to June 2003, plaintiff was required to document when she left the office, but two other employees were not; and (4) plaintiff was terminated on June 19, 2003. Specifically, defendant argues that plaintiff did not exhaust the following allegations included in her complaint: (1) defendant Olson made comments about blacks being mentally inferior to whites, plaintiff's speech being "too black," interracial dating, and told offensive jokes; (2)

-12-

defendant Olson did not allow plaintiff to take computer courses while other employees were able to do so;

(3) the computer that was provided to plaintiff came from other employees, including volunteers; (4) when

plaintiff asked defendant Olson for help, he told her she was as "dumb as a box of rocks"; and (5)

defendant Olson would chastise plaintiff in front of others, but he would speak with other staff in his office.

The court finds that the first set of allegations—those involving comments or jokes about

race—have been exhausted by plaintiff's charge that defendant Olson subjected plaintiff to racial slurs.  The

remaining allegations, however, are discrete actions for which administrative remedies must be exhausted.

*Id.*  The court finds that plaintiff did not exhaust her administrative remedies as to these claims.  Therefore,

plaintiff's other allegations are unexhausted, and therefore not viable.  *Id.*

Defendant also argues that many of plaintiff's claims are barred for plaintiff's failure to timely file her

KHRC charges.  The KAAD requires that a complaint be filed within six months of the alleged act of

discrimination, "unless the act complained of constitutes a continuing pattern or practice of discrimination in

which event it will be from the last act of discrimination."  Kan. Stat. Ann. § 44-1005(i).  The court finds

that plaintiff has sufficiently alleged a pattern and practice of discrimination.  As such, the last act of

plaintiff's alleged discrimination occurred on her alleged termination date, June 13, 2003, or within six

months of December 9, 2003, the date plaintiff filed her KHRC charge.

**3.      KAAD Statute of Limitations**

Defendant briefly argues that it is entitled to summary judgment on plaintiff's KAAD claims that fall

outside the applicable three year statute of limitations.  *See* Kan. Stat. Ann. § 60-512(2).  As plaintiff points

out, however, the case on which defendant relies, *Wagher v. Guy's Foods, Inc.*, held that the statute of

limitations under § 60-512(2) must be "tolled during the pendency of the administrative proceedings."  885

-13-

P.2d 1197, 1204-05 (Kan. 1994); *see also United Cities Gas Co. v. Brock Exploration Co.*, 984 F. Supp. 1379, 1385-86 (D. Kan. 1997) (discussing and following *Wagher*).  Plaintiff's KAAD claim was tolled between December 9, 2003, the date she filed her charge with the KHRC, and October 19, 2004, the date her KAAD administrative remedies were exhausted.  Thus, plaintiff may assert claims dating back three years and 315 days from November 30, 2004, the date she filed the instant lawsuit.  In light of the fact that plaintiff asserts that each of her race discrimination, hostile work environment and retaliation claims occurred within this time frame, the court need not calculate plaintiff's exact lookback date.  Moreover, as plaintiff points out, "[p]laintiffs are not precluded from introducing 'quite probative evidence of earlier acts of discrimination to support a claim of current discriminatory intent,' even if prior events are beyond the limitations period."  *Plotke v. White*, 405 F.3d 1092, 1106-07 (10th Cir. 2005) (quoting *Goodwin v. Gen. Motors Corp.*, 275 F.3d 1005, 1012-13 (10th Cir. 2002)).

**4.      Section 1981 Statute of Limitations**

        Defendant also briefly argues that plaintiff's § 1981 claims are barred by the applicable two-year statute of limitations.  *See* Kan. Stat. Ann. § 60-513(a)(4); *Peppers v. U.S. Cent. Credit Union*, 199 F. Supp. 2d 1152, 1159 (D. Kan. 2002) (citing *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-62 (1987) (other citations omitted)).  The court finds defendant's argument disingenuous.  Plaintiff alleges that she was terminated on June 13, 2003, and she filed her § 1981 claim on November 30, 2004.  Therefore, plaintiff's § 1981 claims clearly fall within the two-year statute of limitations.

**B.      The Merits of Plaintiff's Claims**

        The court applies the same standards and burdens to plaintiff's claims under the KAAD and § 1981.  *See Aramburu*, 112 F.3d at 1403 n.3 (citing *Woods v. Midwest Conveyor Co.*, 648 P.2d 234,

238-39 (Kan. 1982)) (holding that the court applies the same standards under Title VII and the KAAD); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186-87 (1989) (holding that the court applies the same standards under Title VII and 42 U.S.C. § 1981); *Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir. 1994) (same).

**1.      Race Discrimination**

Plaintiff's remaining race discrimination claims include a § 1981 claim against both defendants, and a KAAD claim against defendant CRC. In analyzing each of plaintiff's race discrimination claims, the court will apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under *McDonnell Douglas*, in order to survive summary judgment, plaintiff must first establish a prima facie case of discrimination. *Id.* at 802. If plaintiff carries that burden, defendant must then articulate a facially nondiscriminatory reason for the challenged employment action. *Id.* If defendant makes such a showing, the burden reverts to plaintiff to prove the proffered nondiscriminatory reason is pretextual. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993).

To establish a prima facie case of race discrimination, plaintiff must demonstrate that: (1) she belongs to a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action despite her qualifications; and (4) the position was not eliminated after plaintiff's discharge.[6] *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005); *Rivera v. City and County of Denver*, 365 F.3d 912, 920

---

[6] Both plaintiff and defendant CRC state that the prima facie standard also requires plaintiff to prove that she was treated differently from similarly-situated Caucasian employees. The court finds that this issue is more appropriately analyzed in the pretext stage of the *McDonnell Douglas* burden-shifting test. *See Watts v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir. 2001) (finding that plaintiff may establish pretext by showing that her employer "treated the plaintiff 'differently from other similarly-situated employees who violated work rules of comparable seriousness.'" (quoting *Kendrick*, 220 F.3d at 1230)).

(10th Cir. 2004); *Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000).

Plaintiff is an African-American.  The court finds, and defendant does not dispute, that plaintiff was qualified

for the position from which she was terminated, and that her position was subsequently filled.  Thus, plaintiff

has met her burden of establishing a prima facie case.

Defendant CRC argues that it has several legitimate, nondiscriminatory reasons for plaintiff's

termination; namely, that plaintiff abandoned her job and falsified defendant CRC's documents.  Although

plaintiff has offered evidence that she did not abandon her job, the court finds that defendant CRC has met

this "'exceedingly light'" burden.  *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir. 1999)

(citation omitted).

However, the court finds that plaintiff has offered sufficient evidence "that a discriminatory reason

more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of

credence."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *see also Randle v. City

of Aurora*, 69 F.3d 441, 451-52 (10th Cir. 1995).  Specifically, plaintiff has offered substantial evidence

that defendant Olson regularly subjected her to racially offensive comments and jokes.  The court believes

that a reasonable jury could conclude that these comments and jokes alone constitute pretext.  Also

significant, however, is plaintiff's testimony that suggests defendant Olson was gearing up to fire her prior to

plaintiff being injured.  Moreover, plaintiff has offered evidence that she was treated differently than other

similarly-situated Caucasian employees.  For these reasons, the court denies defendant CRC's summary

judgment motion on plaintiff's race discrimination claims.

**2.      Hostile Work Environment**

Plaintiff's remaining claim of hostile work environment is against defendant CRC in violation of the KAAD.  "To survive summary judgment on a racially hostile work environment claim, a plaintiff must show 'that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.'"  *Chavez v. N.M.*, 397 F.3d 826, 831-32 (10th Cir. 2005) (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)) (citations omitted).  Furthermore, this burden cannot be met "by demonstrating 'a few isolated incidents of racial enmity' or 'sporadic racial slurs'"; plaintiff must instead demonstrate a "'steady barrage'" of racially offensive comments.  *Id.*

In support of its summary judgment motion on plaintiff's hostile work environment claims, defendant CRC argues that defendant Olson's racially offensive comments toward plaintiff were not severe or pervasive because plaintiff cannot articulate many of the specific dates and details surrounding the comments.  Defendant asserts, for instance, that during the last six months of her employment, plaintiff can *only* describe six *specific* dates on which defendant Olson referred to her "black ass."  Significantly, defendant CRC does not deny that defendant Olson made any of the comments or jokes alleged by plaintiff.  The court finds that a reasonable jury could conclude that defendant Olson's racially offensive comments and jokes amounted to a "'steady barrage'" of pervasive and severe racial slurs.  *Id.* Accordingly, the court denies defendant CRC's summary judgment motion on plaintiff's hostile work environment claim.

**3.     Retaliation**

Plaintiff's remaining retaliation claims are against both defendants in violation of § 1981, and against defendant CRC in violation of the KAAD.  The court will utilize the *McDonnell Douglas* burden-shifting

-17-

framework in analyzing plaintiff's retaliation claims.  411 U.S. at 802-05.  To make a prima facie case of

retaliation, plaintiff must prove: "(1) protected opposition to discrimination or participation in a proceeding

arising out of discrimination; (2) adverse action by the employer; and (3) a causal connection between the

protected activity and the adverse action."  *Jeffries v. State of Kan.*, 147 F.3d 1220, 1231 (10th Cir.

1998) (quoting *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993)).  Here, this standard

requires plaintiff to prove that (1) plaintiff complained about defendant Olson's racially offensive comments;

(2) plaintiff was terminated; and (3) a causal connection exists between plaintiff's complaints and her

termination.

   The court finds that plaintiff has sufficiently demonstrated a prima facie case of retaliation.  Plaintiff

testified that she spoke directly to defendant Olson about her dissatisfaction with his racially offensive

comments on one occasion.  She also emailed him in February 2003 about the same subject, and defendant

Olson testified that he remembered receiving plaintiff's email.  Defendant cannot dispute that plaintiff was

terminated.  Finally, plaintiff has offered testimony evidence that after she complained to defendant Olson,

defendant Olson's treatment of plaintiff became worse before she was fired.

   Defendant argues that there are legitimate, nondiscriminatory reasons for plaintiff's termination, but

the court has already held that a reasonable jury could construe defendant's reasons as pretext.  Thus, the

court also denies defendant CRC's motion for summary judgment on plaintiff's retaliation claims.

## C.     Punitive Damages

   Defendant CRC also moves for summary judgment on the issue of punitive damages on plaintiff's

KAAD claims.  Plaintiff concedes that punitive damages are not permitted in KAAD cases, and informs the

court that it will not seek punitive damages under the KAAD.  Thus, defendant's summary judgment motion on this issue is moot.

      **IT IS THEREFORE ORDERED** that defendant Community Resources Counsel of Shawnee County, Kansas, Inc.'s Motion for Summary Judgment as to the KAAD Claims (Doc. 95) is granted in part and denied in part; defendant Community Resources Counsel of Shawnee County, Kansas, Inc.'s Motion for Summary Judgment as to the Title VII Claims (Doc. 98) is granted; and defendant Community Resources Counsel of Shawnee County, Kansas, Inc.'s Motion for Summary Judgment as to the Section 1981 Claims (Doc. 100) is denied.

      Dated this 16th day of May 2006, at Kansas City, Kansas.

                               **s/ Carlos Murguia**
                               **CARLOS MURGUIA**
                               **United States District Judge**